UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

D-4 HASSAN AOUN,

    Defendant.
    _____/

Case No. 10-20458

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT HASSAN AOUN'S RULE 29
MOTION FOR JUDGMENT OF ACQUITTAL [102]**

This matter comes before the Court on Defendant Hassan Aoun's motion for judgment of acquittal brought pursuant to Rule 29, Federal Rules of Criminal Procedure.

On March 28, 2012, Defendant Hassan Aoun was indicted and charged with:

- Count 1 - Conspiracy to Commit Federal Crimes, 18 U.S.C. § 371, alleging that beginning in 2006 and continuing to 2010, in the Eastern District of Michigan, Defendant Hassan Aoun willfully and unlawfully conspired and agreed with others to traffic in counterfeit goods, in violation of federal law; and in furtherance of the scheme, one of the conspirators performed or caused to be performed at least one overt act;

- Count 6 - Trafficking in Counterfeit Goods, Aiding and Abetting, 18 U.S.C. §§ 2320 and 2, alleging that on or about January 13, 2009, Defendant Hassan Aoun trafficked in counterfeit goods, and aided and abetted others in trafficking in counterfeit goods, at Da Jump Off;

- Count 13 - Trafficking in Counterfeit Goods, Aiding and Abetting, 18 U.S.C. §§ 2320 and 2, alleging that

      on or about July 17, 2009, Defendant Hassan Aoun trafficked in counterfeit goods, and aided and abetted others in trafficking in counterfeit goods, at Da Hook Up;

Count 17 -  Trafficking in Counterfeit Goods, Aiding and Abetting, 18 U.S.C. §§ 2320 and 2, alleging that on or about January 12, 2010, Defendant Hassan Aoun trafficked in counterfeit goods, and aided and abetted others in trafficking in counterfeit goods, at Boom Boom Wear;

Count 19 -  Trafficking in Counterfeit Goods, Aiding and Abetting, 18 U.S.C. §§ 2320 and 2, alleging that on or about February 10, 2010, Defendant Hassan Aoun trafficked in counterfeit goods, and aided and abetted others in trafficking in counterfeit goods, at Boom Boom Wear;

Count 20 -  Trafficking in Counterfeit Goods, Aiding and Abetting, 18 U.S.C. §§ 2320 and 2, alleging that on or about February 10, 2010, Defendant Hassan Aoun trafficked in counterfeit goods, and aided and abetted others in trafficking in counterfeit goods, at Da Hook Up.

(1st Superseding Indictment [93].)

After a seven day jury trial, the jury returned a guilty verdict on Counts 1, 6, 13, and 19 and a not guilty verdict on Counts 17 and 20. (4/20/12 Verdict Form [97].) Defendant's motion seeks a judgment of acquittal on Counts 1, 6, 13, and 19.

**I. Analysis**

Defendant challenges the sufficiency of the evidence on his convictions on Counts 1, 6, 13, and 19 under Federal Rule of Criminal Procedure 29. The Court begins with the standard of review and then addresses Defendant's arguments.

 **A. Standard of Review**

"Evidence is sufficient to sustain a conviction if after viewing the evidence in the light most favorable to the prosecution, *and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony*, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *United States v. Driver*, 535 F.3d 424, 428-29 (6th Cir.) (internal quotation marks and citations omitted, emphasis in original), *cert. denied*, 129 S. Ct. 662 (2008). "In examining claims of insufficient evidence, this court does not weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* (internal quotation marks and citation omitted).

### B. Count 1

Defendant argues that his conviction on Count 1 must be set aside because the government failed to present evidence sufficient to prove one of Count 1's essential elements -- that Defendant Hassan Aoun knowingly and voluntarily joined the criminal conspiracy. (Def.'s Mot. at 2.) The gist of Defendant's argument is that "[w]hile the government presented some evidence which may arguably lead to a reasonable inference that Mr. Aoun engaged in a conspiracy, the overwhelming evidence demonstrated that he was a hapless unwitting employee who did what he was told." (*Id.* at 3.) Defendant's argument ignores the standard of review applied to Rule 29 motions for acquittal discussed above. His argument also ignores the bulk of the evidence presented by the government that, despite many warnings and chances, Defendant decided to continue trafficking in counterfeit goods. As observed by the Sixth Circuit, a defendant's knowledge and participation in a criminal conspiracy may be established by circumstantial evidence:

3

> Just as a conspiracy may be inferred from circumstantial evidence, a defendant's knowledge of and participation in a conspiracy may also be inferred from his conduct and established by criminal evidence. Once a conspiracy is established beyond a reasonable doubt, a particular defendant's connection to the conspiracy need only be slight.

*United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008) (internal quotation marks and citations omitted).

All of the fact witnesses testified that the stores operated on a cash-only basis. The stores did not collect or pay State sales tax. Customers could not purchase goods with checks or credit cards. All employees were paid in cash -- there were no pay checks, no withholding, no deductions whatsoever, and no W-2s or 1099s at the end of the year.

Witness after witness, including Defendant's own nephews and Co-Defendants Nithal Aoun and Wissam Aoun, testified that Defendant was deeply involved in managing and operating at least three stores and filled in for Mohamad Aoun at a fourth. There was testimony at trial that Defendant managed Off Da Hook, which closed after it was raided by the Detroit Police Department in January 2007; that he ran Da Jump Off, which closed after it was raided in March 2007; he managed and operated Boom Boom Wear from March 2007 until February 2010; and he was in charge of managing the operations and supervising employee Tarrik Bazzi at Da Hook Up during July 2009 while Mohamad Aoun was out of the country. At Defendant's trial, the government established that Defendant obtained a financial gain from his activities by presenting evidence that, for years, Defendant took home at least $600 to $1,000 a week in cash, tax free, for his efforts.

Some of the witness testimony was as follows. Cynthia Gomez and Davina Morgan worked for Defendant at Da Jump Off. Defendant set their hours, opened and closed the store, and collected the proceeds at the end of the day. Defendant would not allow them

to go into the back room while deliveries were being made, and they were not allowed to see the labels that were taken off the boxes of goods that were delivered. Only Defendant, or in his absence Reuben Smith, could give permission for customers to go into the back room where the counterfeit Nikes were displayed. Defendant hired Cynthia Gomez's sister on the spot without first consulting with anyone. Both Cynthia Gomez and her sister were shaken by the raids and seizures at the stores and ended their employment shortly thereafter.

Courtney Brown testified that when he first came in contact with the Aouns, he was operating two Detroit-area clothing stores, specializing in Negro League apparel and Buffalo Soldiers goods. In about 2004, Brown began buying goods from Wissam Aoun. Brown would then mark the goods up 100% and sell them in his own stores. On occasion, Brown also bought goods directly from Defendant. Although Brown strongly suspected that the goods he bought from the Aouns were counterfeit, he was not certain until his own stores were raided in March of 2007 by a Nike detective. At that point, Mr. Brown moved to Atlanta and shortly thereafter left the clothing business.

Detroit Police Officer James Wiencek assisted Detroit Police Commander James Dolan with the seizure of counterfeit Nikes at Off Da Hook on January 17, 2007. Officer Wiencek recalled that the seizure received some publicity, and he saw the raid reported on the local television news stations. Officer Wiencek testified that there was no separate "Nike room" at Off Da Hook when he was there in 2007.

Michigan State Police Trooper Craig Teur testified that he was involved in two separate seizures of counterfeit goods from stores run by the Aouns approximately one year after the 2007 raid on Off Da Hook. The two seizures he took part in were: (1) the

January 2008 seizure from Boom Boom Wear where there was an inner "Nike room;" and (2) the January 13, 2009 seizure from Da Jump Off where there was a hidden "Nike room."

Michigan State Police Detective Sergeant Sandra Larsen was the affiant on the search warrant for counterfeit goods at Da Jump Off and assisted in the execution of that warrant on January 13, 2009. She handcuffed and detained Defendant while the inventory of counterfeit goods was being boxed up and loaded onto trucks. At the time of that seizure at the Da Jump Off, there was a "Nike room" at the back of the store and no Nike shoes were displayed on the main sales floor. Detective Sergeant Larsen left a copy of her search warrant affidavit at Da Jump Off which stated that she was authorized to seize evidence of the crime of trafficking in counterfeit goods. She found nothing resembling typical business records at Da Jump Off except for handwritten employee time sheets (Trial Exs. 6D.1, 6D.2) and a notebook that referenced inventories of goods and the locations of four stores run by the Aouns (Trial Ex. 6D.3).

Witness Henry Canales first worked for Wissam Aoun at GoodFellas, and then for Nithal Aoun at Da Jump Off, where he did maintenance work, sold merchandise, and delivered goods to the Aouns' stores. Mr. Canales testified that Defendant was Wissam Aoun's uncle, and Defendant worked at Da Jump Off or other stores run by the Aouns. Mr. Canales admitted that when he first began working for the Aouns in 2008, he was living in a federal halfway house, making the transition from prison back to the community after serving a sentence for dealing drugs. He continued to work for the Aouns while he was on supervised release, after leaving the halfway house. He helped build the separate back rooms for Nikes in several of the Aouns' stores. After Boom Boom Wear was raided in January 2009, Mr. Canales quit working for the Aouns and looked for other work. He

6

recognized that the Aoun stores were engaging in criminal activity, and he did not want to risk violating the conditions of his supervised release and be sent back to prison himself.

Tarrik Bazzi met Mohamad Aoun when Bazzi was a student at Henry Ford Community College in 2007. He started working at Da Hook Up in October 2007. At various times between October 2007 and September 2009, Mr. Bazzi worked at Da Hook Up, Da Jump Off, and Boom Boom Wear. He was paid in $60 a day in cash. He admitted that he knew that the goods he was selling were "fake." He recalled working for Defendant at Da Jump Off before it was raided and closed in January 2009. In addition, Mr. Bazzi was working at Da Hook Up in the summer of 2009 when the FBI Cooperating Witness (CW) made controlled purchases from Mohamad Aoun and from Defendant and taped their conversations. Mr. Bazzi quit working for the Aouns after their stores were raided because his father told him that he was going to get into trouble and would ruin his chances for the future. When he appeared at Defendant's trial, Mr. Bazzi was awaiting the results of the firefighter exam he had recently taken in New York City.

Co-Defendant Ghassan Aoun worked for the Aouns for approximately four months -- from October 2009 until February 10, 2012. He built out the store that housed Fresh Gear on Davison, outfitting it with a back room to display counterfeit Nikes because he knew that "the Nike detectives" would periodically visit stores and look for unauthorized goods. Ghassan Aoun said Defendant worked at various stores since 2003, including Abe's Wear on East 7 Mile Road and Boom Boom Wear on West 7 Mile Road. Defendant opened and closed the stores, had the keys, handled the cash receipts, and sold merchandise. Ghassan Aoun said that "everyone" knew the goods were counterfeit, but he did not believe that the law would be enforced. He testified that he loaned Nithal Aoun $30,000; $23,000

to stock Fresh Gear, and another $7,000 for materials he needed to build out the store. He never recouped the money. Nonetheless, he walked away when the store was raided on February 10, 2010.

Co-Defendant Nithal Aoun testified for his uncle pursuant to a defense trial subpoena. He admitted that the goods the conspirators were selling at the Aouns' stores, except GoodFellas, were counterfeit, and everbody knew it. He also acknowledged seeing news reports about the raids on the Aouns' stores and knowing about the numerous seizures of their inventories of counterfeit goods.

Co-Defendant Wissam Aoun, who is also Defendant's nephew, testified pursuant to a defense trial subpoena. He acknowledged that on January 13, 2009, Fox 2 News ran a story on the raid at Da Jump Off. He watched the news report and even noted it in his calendar for that date (Ex. 27B.1, 2). He said that members of the extended Aoun family were extremely close, and they discussed the news story about the raid on Da Jump Off extensively. He recalled seeing Defendant, his uncle, pictured on the television news. He recalled hearing the reporter state that law enforcement was cracking down on stores selling counterfeit goods and predicting that some individuals would face criminal charges. Co-Defendant Wissam Aoun acknowledged that Defendant had keys to the stores he managed, collected the days' receipts, paid the employees in cash, could hire and fire them, set their hours, and was responsible for keeping track of inventory and keeping the stores stocked with goods.

As evidence that Defendant was in complete control of Da Hook Up in Mohamad Aoun's absence, the government presented consensually monitored conversations that occurred in July 2009 at Da Hook Up between Defendant and the FBI CW (Exs. 15A and

16A). These conversations revealed that Defendant knew what goods would be coming in, the cost of the goods that were ordered, how much competitors were charging for similar goods, and what the "normal" sale prices should be. Defendant was hesitant to sell large quantities of goods to the CW until he spoke to Mohamad Aoun on the phone and confirmed that Mohamad Aoun had been selling wholesale amounts of merchandise to the CW for some time. It is reasonable to infer that Defendant knew he was engaged in unlawful activity from his unwillingness to give the CW his true name. Even after Defendant spoke with Mohamad Aoun on the phone, he continued to misidentify himself to the CW as "Hassan Bazzi" (Ex. 16A).

Additional evidence that Defendant was in charge of the store he was running in November and December 2009 comes from recorded conversations, intercepted pursuant to Title III, between Defendant and Nithal Aoun (Exs. 23A, 24A, 24B, and 24C). That evidence revealed that Defendant demanded that Nithal Aoun maintain the store and keep him supplied with an inventory of goods.

This and other testimony and evidence introduced at Defendant's trial is sufficient to establish that Defendant knew the purpose of the criminal conspiracy was to sell counterfeit goods, that Defendant joined the conspiracy knowingly and willingly, and that Defendant participated in this criminal organization from as early as 2003 through at least February 2010, and that Defendant committed overt acts in furtherance of the conspiracy's goals. Accordingly, Defendant's Rule 29 motion as to Count 1 is denied.

### B. Counts 6, 13, and 19

Defendant also challenges the sufficiency of the evidence on his convictions on Counts 6, 13, and 19 for trafficking in counterfeit goods and aiding and abetting others in

trafficking in counterfeit goods, in violation of 18 U.S.C §§ 2320 and 2. These convictions are tied to specific events:

Count 6 addressed January 13, 2009, when the Michigan State Police seized the inventory at Da Jump Off, put Defendant in handcuffs while they detained him, and Fox 2 News covered the event;

Count 13 addressed July 17, 2009, when Defendant personally sold the FBI CW boxes of counterfeit goods in exchange for $2,000 at Da Hook Up; and

Count 19 addressed February 10, 2009, when FBI agents seized 111 shipping boxes filled with counterfeit merchandise from Boom Boom Wear while Defendant was present.

As discussed above, the government presented sufficient evidence to support the jury's convictions on Counts 6, 13, and 19. Contrary to Defendant's arguments here, there was sufficient evidence presented for a conviction on aiding and abetting as alleged in those Counts. Likewise, in connection with those Counts, there was sufficient evidence presented that Defendant had obtained a financial gain.

On the specific dates addressed in Counts 6, 13, and 19, in addition to other evidence, evidence was presented that Defendant was either personally involved in the trafficking of counterfeit goods (Count 13) or present on the date of a government seizure of counterfeit goods (Counts 6 and 19). In contrast, on Counts 17 and 20, where the jury found Defendant not guilty, the government presented evidence that the jury evidently found insufficient to prove that Defendant even aided and abetted:

either (1) Mohamad Aoun and John Taylor in trafficking in counterfeit goods on January 12, 2010, the day FBI agents watched Mohamad Aoun and John Taylor move

boxes of counterfeit goods from the Aouns' Michigan Avenue Warehouse to Defendant's store, Boom Boom Wear (Count 17); or

(2) Nithal Aoun, Mohamad Aoun, and John Taylor in trafficking in counterfeit goods on February 10, 2010, when FBI agents seized 61 shipping boxes filled with counterfeit goods from Da Hook Up, the store that Defendant managed in July 2009 when Mohamad Aoun was out of town (Count 20).

Based on the guilty and not guilty verdicts, the jury exercised its independent judgment and found Defendant guilty only for conduct on specific dates where evidence was introduced showing that he was actually present at the site where counterfeit goods were seized (Counts 6 and 19) or personally involved in the trafficking of counterfeit goods (Count 13). This Court rejects Defendant's arguments that the guilty verdicts on Counts 6, 13, and 19 are based on insufficient evidence, and his motion for a judgment of acquittal is denied as to these Counts as well.

## II. Conclusion

For the above-stated reasons, Defendant Hassan Aoun's motion for judgment of acquittal is DENIED.

        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: July 13, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 13, 2012, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager